IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ORVIS WAIN REYNOLDS, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:19-cv-01577-E |
| | § | |
| CITY OF COMMERCE, TEXAS, | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is the Second Motion to Dismiss filed by Defendant City of Commerce (the City) in this action bought by Plaintiff Orvis Wain Reynolds under 42 U.S.C. § 1983 (Doc. No. 21). The Court previously dismissed Reynolds's claims against the City under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim, but allowed Reynolds the opportunity to file an amended complaint with facts to support his claims. Reynolds filed a First Amended Complaint, which is largely identical to his original complaint (Doc. No. 20). The City again moves to dismiss. Having carefully considered the motion, the parties' briefing, and applicable law, the Court concludes the motion should be GRANTED.

BACKGROUND

The following is taken from Reynolds's First Amended Complaint (Doc. No. 20). Reynolds owns property in Commerce, Texas. The property contained three buildings, one of which Reynolds operated as a club for more than thirty-five years. Another building was operated as a commercial grill for an extended period of time. Reynolds maintained the property "in a manner that complied with standards, ordinances and policies" promulgated and implemented by the City.

1

In May 2017, the City's Building Standards Commission (Commission) entered four orders finding structures on the properties were "dilapidated, substandard and/or unfit for human habitation, constitute[d] a hazard to the health, safety and welfare of the citizen and likely to endanger persons and property." The orders, copies of which are attached to Reynolds's First Amended Complaint, reflect a public hearing was held on the matter and the Commission "motioned for demo and voted for demo" of structures and ordered abatement of vehicles and property and cleaning of property. In July 2017, pursuant to the orders, three buildings were demolished.

In an affidavit attached to his First Amended Complaint, Reynolds avers that he attended the May 18, 2017 hearing and "voiced [his] concern that [his] properties were not in violation of any building codes and that the action was motivated as a result of [a] March 23, 2017 homicide at the Dance Hall…" (Doc. No. 20-5). His affidavit indicates he also discussed documentation showing his property complied with the City code[1] and left the meeting "under the impression that [he] was to return to the next meeting with the documentation and that the documents would be review[ed] and that the matter would be resolved." According to Reynolds, he returned, but there was no meeting. He further avers that he was extremely ill at the time and has "no recall concerning information being provided to [him] concerning the filing of an appeal or filing a lawsuit."

Reynolds asserts the City's conduct "violated constitutional guidelines established to protect [his] constitutional rights against the Illegal Taking of his Property, Equal Right Protection an[d] Due Process under Article 1, section 19 of the Texas Constitution and the Fifth and Fourteenth Amendments to the Constitution of the United States." With respect to those violations, Reynolds

---

[1] Specifically, Reynolds's affidavit reads, "I voice my concerns that had documentation supporting that my properties complaince [sic] with the various City Building Codes."

2

alleges the City, pursuant to the Commission's orders, demolished the buildings "utilizing erroneous information as a pretext" following the homicide on the property. He alleges that the hearing was a "Ramrod Process," and his property was "falsely portrayed" as non-compliant with the City's ordinances and regulations "in addition to misleading and failing to provide [him] with his various Due Process Rights." Further, the City's conduct was "done in a manner 'Dissimilar for other similar Property Owner.'"

The City moves to dismiss, as it did in response to Reynold's original complaint, because the First Amended Complaint provides no factual specificity describing, in a nonconclusory way, a City policy or custom or its relationship to any underlying constitutional violation. The City also asserts that its ordinances governing the acts are constitutional, Reynolds's illegal taking and due process claims are barred because he did not timely appeal the Commission's orders, and he failed to alleged facts to support a violation of his equal protection rights.

## LEGAL STANDARD

Federal Rule of Civil Procedure 8(a) requires a complaint to include "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a). If a plaintiff fails to satisfy Rule 8(a), the defendant may file a motion to dismiss the plaintiff's claim under Federal Rule of Civil Procedure 12(b)(6) for "failure to state a claim upon which relief may be granted." FED. R. CIV. P. 12(b)(6).

On a Rule 12(b)(6) motion to dismiss, a court may consider only the pleadings, including attachments to the complaint, attachments to the motion if they are referred to in the complaint and central to the plaintiff's claims, and "matters of which judicial notice may be taken under Federal Rule of Evidence 201." *Inclusive Communities Project, Inc. v. Lincoln Prop. Co.*, 920 F.3d 890, 900 (5th Cir. 2019); *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007). The

3

court "accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d at 205 (quotation marks and citation omitted).

To survive a motion to dismiss, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "[C]onclusory statements" or "a legal conclusion couched as a factual assertion are not accepted as true." *Id.* A plaintiff must plead facts with enough specificity "to raise a right to relief above the speculative level" so as to "nudge their claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. "[A] formulaic recitation of the elements of a cause of action will not do." *Id.* at 555. If the facts do not permit the Court to infer more than the mere possibility of misconduct, the complaint does not show the plaintiff is plausibly entitled to relief. *Iqbal*, 556 U.S. at 678.

ANALYSIS

*1.   42 U.S.C. § 1983*

The City moves to dismiss Reynolds's section 1983 claims contending he has not sufficiently alleged facts triggering municipal liability under *Monell*. Citing *Spiller v. City of Texas City*, 130 F.3d 162, 167 (5th Cir. 1997), the City contends Reynolds has not pleaded specific, nonconclusory facts describing any policy or custom and its relationship to an underlying constitutional violation.

Section 1983 provides a cause of action for individuals who have been "depriv[ed] of any rights, privileges, or immunities secured by the Constitution and laws" of the United States by a

4

"person" acting under color of state law. 42 U.S.C. § 1983; *Albright v. Oliver*, 510 U.S. 266, 271 (1994). For relief under section 1983, a plaintiff must establish: (1) he has been deprived of a right secured by the Constitution and the laws of the United States; and (2) the deprivation was committed under color of state law. *Whitley v. Hanna*, 726 F.3d 631, 638 (5th Cir. 2013).

A municipality may be liable under section 1983. *Monell v. Department of Social Services*, 436 U.S. 658, 690 (1978); *Hampton Co. Nat'l Sur., LLC v. Tunica Cty.*, 543 F.3d 221, 224 (5th Cir. 2008). However, a municipality may not be sued under section 1983 for "an injury inflicted solely by its employees or agents." *Monell*, 436 U.S. at 694. It is only when "execution of a [municipality's] policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the [municipality] as an entity is responsible under § 1983." *Id.*; *Meadowbriar Home for Children, Inc. v. Gunn*, 81 F.3d 521, 532 (5th Cir. 1996). For a municipality to be liable under section 1983 for the misconduct of one if its employees, a plaintiff must initially allege that an official policy was a cause in fact of the deprivation of rights inflicted," and the "description of [the] policy or custom and its relationship to the underlying constitutional violation ... cannot be conclusory; it must contain specific facts." *Spiller*, 130 F.3d at 167.

An official policy may arise either directly from an authorized policymaker's "policy statement, ordinance, regulation, or decision," or indirectly from a "persistent, widespread practice" of non-policymaking municipal employees that "is so common and well settled as to constitute a custom." *Bennett v. Slidell,* 735 F.2d 861, 862 (5th Cir. 1984) (en banc) (per curiam). With respect to a direct policymaker action, a single discretionary action taken by a policymaking official does not establish an official policy unless the official is "responsible for establishing final government policy" with respect to the discretionary action taken. *Brady v. Fort Bend County,*

5

145 F.3d 691, 699 (5th Cir. 1998) (quoting *Pembaur v. City of Cincinnati,* 475 U.S. 469, 483 (1986)). There is a distinction between a final policymaker and a final decisionmaker. *See Bolton v. City of Dallas, Tex.*, 541 F.3d 545, 548–49 (5th Cir. 2008). To be a policymaker, an official must "decide the goals for a particular city function and devise the means of achieving those goals." *Webb v. Town of St. Joseph*, 925 F.3d 209, 217 (5th Cir. 2019). "When an official's discretionary decisions are constrained by policies not of that official's making, those policies, rather than the subordinate's departure from them, is the act of the municipality." *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988).

Under Texas law, the final policymaker for a city is the city council. *Groden v. City of Dallas, Tex.*, 826 F.3d 280, 286 (5th Cir. 2016); *Bolton*, 541 F.3d at 550. Here, the City has empowered the Commission to, among other things, enforce ordinances related to dangerously damaged or deteriorated buildings or improvements. *See* Commerce, Texas, Municipal Code § 2-75(3). Although the Commission may be a final decisionmaker in administering those ordinances, the council is the final policymaker with respect to those ordinances. *See, e.g., Bennett v. City of Slidell*, 728 F.2d 762, 769–70 (5th Cir. 1984).

Reynolds does not complain of any specific City ordinance. Instead, he complains that structures on his property were demolished, pursuant to the Commission's orders and based on "erroneous information as a pretext." He further complains that his property was "falsely portrayed" as non-compliant and he was denied due process at the Commission hearing regarding the abatement of the structures and clearing of the property. Finally, he asserts the City's conduct was "done in a manner 'Dissimilar for other similar Property Owner.'"

In its previous Memorandum and Order, the Court instructed Reynolds that allegations virtually identical to these were insufficient to allege a section 1983 claim against the City, and

6

that a plaintiff must describe, with specific facts, an official policy or custom that was the cause in fact of a deprivation of his rights. *Spiller*, 130 F.3d at 167. However, the First Amended Complaint neither identifies any such City policy or custom nor alleges specific facts to show a policy or custom was the cause in fact of any constitutional violation. Like the original complaint, the First Amended Complaint contains vague and conclusory allegations that Reynolds's rights were violated vis-à-vis the Commission's hearing and decision regarding his property, but fails to link either of those to any particular City policy or persistent and widespread practice. *See Amaya v. City of San Antonio*, 980 F. Supp.2d 771, 783 (W.D. Tex. 2013). Because Reynolds pleads no facts, read in the light most favorable to him, to show the execution of an official policy or custom deprived him of his constitutional rights, he fails to state a section 1983 claim for municipal liability.[2]

*2.     State Constitutional Claims*

Also included under Reynolds's section 1983 claim are allegations that the City's conduct "violated constitutional guidelines established to protect [his] constitutional rights against the Illegal Taking of his Property, Equal Right Protection an[d] Due Process under Article 1, section 19 of the Texas Constitution."[3] The City asserts Reynolds's takings and due process claims must be dismissed because he did not appeal the Board's administrative quasi-judicial determination as required by Texas law and his equal protection claim must be dismissed because Texas law does not provide a direct cause of action for an alleged equal protection violation.

---

[2] Because Reynolds fails to allege any official policy to support his section 1983 municipal liability claim, the Court need not address the City's remaining arguments supporting dismissal of the claim.

[3] Article 1, Section 19 provides that "[n]o citizen of this State shall be deprived of life, liberty, property, privileges or immunities, or in any manner disfranchised, except by the due course of the law of the land. TEX. CONST. art. I § 19. Article 1, Section 17 also may apply to a taking claim: "[n]o person's property shall be taken, damaged, or destroyed for or applied to public use without adequate compensation being made, …." *Id.* § 17. To the extent Reynolds intended to assert a taking claim under Article 1, Section 17, the result is the same.

7

Under Texas law, "a party asserting a taking must first exhaust its administrative remedies and comply with jurisdictional prerequisites for suit." *Patel v. City of Everman*, 361 S.W.3d 600, 601–02 (Tex. 2012) (quoting *City of Dall. v. Stewart,* 361 S.W.3d 562 (Tex. 2012)). And, an appeal of a municipal building commission's administrative determination is the proper forum for litigating a taking claim arising out of the determination. *Patel*, 361 S.W.3d at 601–02 ("a party asserting a taking based on an allegedly improper administrative nuisance determination must appeal that determination and assert his takings claim in that proceeding"); *City of Beaumont v. Como*, 381 S.W.3d 538, 539–40 (Tex. 2012) (per curiam) (dismissing takings claim brought under Texas Constitution when plaintiff did not appeal administrative nuisance determination).

Here, a City ordinance provides for an appeal de novo to the district court of any Commission decision and/or order requiring removal and/or demolition of a building located on property subject to the decision and/or order. *See* Commerce, Texas, Municipal Code § 2-78(c); *see also* TEX. LOC. GOV'T CODE ANN. § 54.039(a) ("Any owner … aggrieved by any decision of a commission panel may present a petition to a district court, duly verified, setting forth that the decision is illegal, in whole or in part, and specifying the grounds of the illegality … within 30 calendar days after the date a copy of the final decision of the commission panel"). "If no appeal or appeals are taken from the decision and/or order of the Commission within the time period provided…, the decision and/or order of the Commission is in all things final and binding." Commerce, Texas, Municipal Code § 2-79; LOC. GOV'T § 54.041 (same).

The Court, on the City's previous motion, declined to dismiss Reynolds's state law takings claim on this ground because his original complaint did not contain facts regarding an appeal of the Commission's orders. However, the affidavit he has attached to his First Amended Petition demonstrates that he did not timely appeal. Accordingly, because he "cannot attack collaterally

8

what [he] cho[se] not to challenge directly," his takings claim is barred and should be dismissed. *City of Beaumont*, 381 S.W.3d at 539–40.

To the extent Reynolds alleges due course of law and equal protection violations as bases for recovery independent of his takings claim, he also fails to state a claim for relief. Article 1, Section 19 provides a cause of action for direct claims seeking equitable relief, but not a private cause of action for damages.[4] *See City of Beaumont v. Bouillion,* 896 S.W.2d 143, 148–49 (Tex. 1995); *Maryland Manor Assocs. v. City of Houston*, 816 F. Supp.2d 394, 408–09 (S.D. Tex. 2011) (citing *Patel v. City of Everman,* 179 S.W.3d 1, 13 (Tex. App.—Tyler 2004, pet. denied)); *RBIII, L.P. v. City of San Antonio*, No. SA-09-cv-119-XR, 2010 WL 3516180, at *7 (W.D. Tex. Sept. 3, 2010). Although Reynolds complains of due process and equal protection violations under the Texas Constitution, he seeks only compensatory damages, reasonable attorney's fees and costs and pre-judgment and post-judgment interest; he does not state a cause of action for equitable relief. Accordingly, the Court must dismiss his state constitutional claims.

## CONCLUSION

For the reasons stated above, the Court finds Reynolds has not pleaded facts that, read in the light most favorable to him, show an official policy and its relationship to any underlying constitutional violation and, thus, fails to state a section 1983 claim for municipal liability. Reynolds also has failed to adequately plead a claim for violation of Article 1, Section 19 of the Texas Constitution. Accordingly, the City's Second Motion to Dismiss is **GRANTED**. And,

---

[4] The First Amended Petition does not cite to Article 1, Section 3, the equal protection clause of the Texas Constitution. *See* TEX. CONST. art. I, § 3. However, that provision also does not authorize a suit for damages. *Shelby v. The City of El Paso*, No. EP-12-cv-0200-DCG, 2013 WL 12086210, at *7 (W.D. Tex. June 5, 2013), *aff'd sub nom. Shelby v. City of El Paso, Tex.*, 577 F. App'x 327 (5th Cir. 2014) (citing *Vincent v. W. Tex. State Univ.,* 895 S.W.2d 469, 475 (Tex. App.—Amarillo 1995, no pet.)).

because Reynolds, who did not file a response to the motion, already has had an opportunity to replead his allegations, his claims against the City are **DISMISSED with prejudice**.

**SO ORDERED**; signed January 27, 2021.

ADA BROWN
UNITED STATES DISTRICT JUDGE